UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

TIFFANY GONZALEZ, JASON ESAW,　　　　:
MARCQUES MCCALL, and KAYDIAN　　　　 :
FERGUSON,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Plaintiffs,　　　　　　 :　　REVISED REPORT AND
　　　　　　　　　　　　　　　　　　　　:　　RECOMMENDATION
　　　　　-against-　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　:　　19-CV-00127 (ENV) (PK)
EMPLOYER SOLUTIONS STAFFING　　　　　:
GROUP, LLC, EMPLOYER SOLUTIONS　　　 :
STAFFING GROUP II, LLC, HORIZONS　　　 :
HRS, LTD., EUROSOFT INC. d/b/a STARK　 :
TALENT, TICO EXPRESS, INC.,　　　　　　:
FERNANDO BROWN, and GARY　　　　　　:
HARGROVE,　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Defendants.　　　　　　:

---------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Tiffany Gonzalez ("Gonzalez"), Jason Esaw ("Esaw"), Marcques McCall ("McCall"), and

Kaydian Ferguson ("Ferguson," and collectively, "Plaintiffs") brought this action against Employer

Solutions Staffing Group, LLC ("ESSG"), Employer Solutions Staffing Group II, LLC ("ESSG II"),

Horizons HRS, Ltd. ("Horizons"), Eurosoft Inc. d/b/a Stark Talent ("Stark"), Tico Express, Inc.

("Tico Express"), Fernando Brown ("Brown"), and Gary Hargrove ("Hargrove") (collectively,

"Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ *et seq.*, and the

New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.* (*See* "Am. Compl.," Dkt. 18.) Plaintiffs

entered into a settlement agreement with Defendants ESSG, ESSG II, and Hargrove (the "Settling

Defendants"), pursuant to which a stipulation of dismissal was filed. (Motion for Settlement

Approval, Dkt. 31; Order Approving Settlement dated May 28, 2020; Stipulation of Dismissal, Dkt.

38.)

Plaintiffs have moved for default judgment against the remaining defendants: Horizons, Stark,

Tico Express, and Brown (the "Defaulting Defendants").  ("Motion," Dkt. 60.)  The Honorable Eric N. Vitaliano referred the Motion to me for a report and recommendation.  For the reasons stated herein, I respectfully recommend that the Motion be GRANTED in part and DENIED in part.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Background

The following facts are taken from the Amended Complaint (Dkt. 18), Plaintiff's Memorandum in Support of Application for Default Judgment ("Pl. Mem.," Dkt. 60-1), and the Declarations of Nicola Ciliotta ("Ciliotta Decl.," Dkt. 60-7),[1] Tiffany Gonzalez ("Gonzalez Decl.," Dkt. 60-3), Jason Esaw ("Esaw Decl.," Dkt. 60-4), Marcques McCall ("McCall Decl.," Dkt. 60-5), and Kaydian Ferguson ("Ferguson Decl.," Dkt. 60-6), and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of a defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

#### A.    The Defaulting Defendants

Tico Express is a delivery company providing shipping services to businesses and individuals in New York City.  (Am. Compl. ¶ 12.)

Fernando Brown served as President and Chief Executive Officer of Tico Express.  (*Id.* ¶ 13.) In that role he "controlled Tico Express' operations, and had the authority to hire, fire, and discipline employees; set work schedules, and determine the terms and conditions of employment, including rates and method of pay."  (Gonzalez Decl. ¶ 9; Esaw Decl. ¶ 9; McCall Decl. ¶ 9; Ferguson Decl. ¶ 9.)

Horizons, Stark, ESSG, and ESSG II provided "staffing, human resource, and other services

---

[1] Plaintiffs clarified that various references to the "Declaration of Nicole Grunfeld" in their papers were made in error, and refer instead to the Declaration of Nicola Ciliotta, Dkt. 60-7.

to Tico Express." (Am. Compl. ¶ 15.) Although ESSG and ESSG II were Plaintiffs' "direct employers," Horizons assigned Plaintiffs to specific work site locations and issued their paychecks. (*Id.* ¶¶ 16-17.) Horizons assigned Plaintiffs to work at Tico Express. (*Id.* ¶ 18.) Stark "handl[ed] the time records" for Plaintiffs and "report[ed] the hours that Plaintiffs worked to Horizons." (*Id.* ¶ 19.)

All Defendants, including the Defaulting Defendants, "set[] Plaintiff[s'] schedules and day-to-day activities," "supervis[ed] their performance," had the power to "discipline and terminate Plaintiffs," "were responsible for compensating Plaintiffs throughout their employment," and "jointly managed, supervised, hired, fired, and controlled the manner of pay of Plaintiffs." (*Id.* ¶¶ 20-23.)

### B.    Allegations Common to All Plaintiffs

Plaintiffs regularly worked for more than forty hours per week but were not paid overtime wages. (*Id.* ¶ 55.) Plaintiffs were not required to record their hours worked, and Defendants did not track them. (*Id.* ¶¶ 28, 35, 43, 50.) Plaintiffs were not provided meals or rest breaks during their shifts. (*Id.* ¶¶ 29, 36, 44, 51.)

Plaintiffs were not provided with a wage notice at the time of hire describing their rate or rates of pay, their employer's name and address, telephone number, or other information required by law, and they did not receive wage statements. (*Id.* ¶¶ 56-57.) In addition, the Defaulting Defendants withheld paychecks after Plaintiffs requested their earned overtime wages. (*Id.* ¶ 59.)

### C.    Individual Plaintiffs' Allegations

#### 1.    Plaintiff Tiffany Gonzalez

Gonzalez was employed by Tico Express as a dispatch manager from March 2018 until July 9, 2018. (*Id.* ¶ 25; Gonzalez Decl. ¶ 10.) Her duties included "dispatching drivers to their routes, scheduling the drivers, acquiring new accounts for Tico Express, and overseeing the drivers." (Am. Compl. ¶ 26; Gonzalez Decl. ¶ 11.) She worked seven days per week, from 7:00 a.m. until 11:00 p.m., for a total of 112 hours per week. (Am. Compl. ¶ 27; Gonzalez Decl. ¶ 12.) She was paid $20.00 per

hour for forty hours of work per week, a total of $800.00 per week, regardless of the actual number of hours worked.  (Am. Compl. ¶¶ 30-31; Gonzalez Decl. ¶ 16.)  Gonzalez was not paid for her final four days of work, which totaled 67 hours.  (*Id.* ¶¶ 19-20.)

        2.     <u>Plaintiff Jason Esaw</u>

Esaw worked for Defendants as a delivery driver from February 28, 2018 until June 27, 2018. (Am. Compl. ¶ 32; Esaw Decl. ¶ 10.)   His duties included "driving the delivery truck, picking up packages to be delivered, and dropping off packages to the customers."  (Am. Compl. ¶ 33; Esaw Decl. ¶ 11.)  Esaw worked five days per week from 9:00 a.m. until 6:00 p.m. or 7:00 p.m., for an average of 47.5 hours per week.  (Am. Compl. ¶ 34; Esaw Decl. ¶ 12.)  He was paid an hourly wage of $20.00 for forty hours per week, a total of $800.00 per week, regardless of the number of hours worked.  (Am. Compl. ¶ 37; Esaw Decl. ¶ 16.)  Esaw was not paid for his final two days of work, which totaled 18 hours.  (Esaw Decl. ¶ 21.)

        3.     <u>Plaintiff Marques McCall</u>

McCall worked for Defendants as an account manager from April 2018 until July 9, 2018. (Am. Compl. ¶ 39; McCall Decl. ¶ 10.) His duties included "going into the field to acquire new accounts for Tico Express, managing existing accounts, and occasionally helping the delivery drivers deliver package to customers."  (Am. Compl. ¶ 40; McCall Decl. ¶ 11.)  McCall worked five days per week from either 9:00 a.m. until 5:00 p.m. or 10:00 a.m. until 6:00 p.m., as well as an additional two to three hours per week outside these hours, for an average of 42.5 hours per week.  (Am. Compl. ¶¶ 41-42; McCall Decl. ¶ 12-13.)  He was paid an hourly wage of $25.00 for forty hours per week, a total of $1000.00 per week, regardless of the number of hours worked.  (Am. Compl. ¶ 45; McCall Decl. ¶ 17.)  McCall was not paid for his final six days of work, which totaled 55 hours.  (McCall Decl. ¶¶ 20-21.)

4.        Plaintiff Kaydian Ferguson

Ferguson worked as a dispatch assistant from May 28, 2018 until June 24, 2018.  (Am. Compl. ¶ 47; Ferguson Decl. ¶ 10.)  Her duties included "helping the dispatch manager carry out her duties; maintaining records tracking the location of packages; communicating with customers regarding incoming deliveries; and speaking with clients to resolve any issues with delivery."  (Am. Compl. ¶ 48; Ferguson Decl. ¶ 11.)  Ferguson worked five days per week from 7:00 a.m. until 11:00 p.m., for a total of 80 hours per week.  (Am. Compl. ¶ 49; Ferguson Decl. ¶ 12.)  She was paid an hourly wage of $15.00 for forty hours per week, a total of $600.00 per week, regardless of the number of hours worked.  (Am. Compl. ¶ 52; Ferguson Decl. ¶ 16.)  Ferguson was not paid for her final five hours of work.  (Ferguson Decl. ¶ 20.)

## II.    **Procedural Background**

On January 8, 2019, Plaintiffs filed the Complaint.  (Dkt. 1; Ciliotta Decl. ¶¶ 7, 18.)  Brown filed an Answer on May 1, 2019.  (Dkt. 15.)  On May 8, 2019, Plaintiffs filed the Amended Complaint adding ESSG II as a defendant.  (Dkt. 18; Ciliotta Decl. ¶ 18.)  Plaintiffs alleged causes of action against Defendants for overtime violations under the FLSA and the NYLL, failure to timely pay wages under NYLL § 191(1)(a)(i), failure to provide payroll notices under NYLL § 195(1), and failure to provide wage statements under NYLL § 195(3).  (Am Compl. ¶¶ 61-90.)

On June 24, 2019, this case was stayed pending arbitration of Plaintiffs' claims with the American Arbitration Association (the "AAA"), on consent by all parties except Tico Express and Brown.  (*See* Joint Stipulation to Arbitrate and Stay the Action, Dkt. 22; Order dated June 25, 2019.)  On March 21, 2020, an arbitrator approved a settlement agreement between Plaintiffs and the Settling Defendants.  (*See* AAA Order Approving Settlement Agreement and Dismissing Action with Respect to Certain Respondents ("AAA Order"), Ex. 4 to the Ciliotta Decl., Dkt 60-11.)  The AAA Order dismisses with prejudice the claims against the Settling Defendants.  (*Id.* at 2-3.)  Because the AAA

Employment Arbitration Rules and Mediation Procedures do not permit a default award based solely on a party's failure to appear or participate (*see* Email from the AAA, Ex. 5 to the Ciliotta Decl., Dkt. 60-12; AAA Rules and Procedures, Ex. 6 to the Ciliotta Decl. at 20, Dkt. 60-13), the AAA Order administratively dismissed without prejudice the claims against the Defaulting Defendants, and the matter was returned to this Court.  (AAA Order at 3.)

On May 28, 2020, the Court approved the proposed Settlement Agreement between Plaintiffs and the Settling Defendants (Order dated May 28, 2020) and those parties subsequently filed a Stipulation of Dismissal on July 1, 2020.  (Dkt. 38.)

On March 24, 2020, the Court granted the motion filed by counsel for Horizons and Stark to withdraw as counsel, and Horizons and Stark were ordered to obtain new counsel and have counsel file a notice of appearance by April 24, 2020.  (Minute Entry dated Mar. 24, 2020.)  They did not do so.  On May 28, 2020, Horizons, Stark, Tico Express, and Brown were ordered to file a status letter or proposed discovery plan by June 5, 2020.  (Order dated May 28, 2020.)  No proposed discovery plan was submitted.  Horizons, Stark, and Tico Express also failed to file any answer to Plaintiffs' Amended Complaint.  Plaintiffs subsequently requested a certificate of default against the Defaulting Defendants (Dkt. 39), which the Clerk entered on August 3, 2020.  (Dkt. 41.)

Plaintiffs filed the first Motion for Default Judgment on September 11, 2020.  (Dkt. 42.)  The Court scheduled a status conference to discuss whether service of process of the Amended Complaint on Brown had been proper and whether the Motion for Default Judgment complied with Local Civil Rules 7.1 and 55.2.  (Order dated Jan. 27, 2021.)  Brown, but no other Defaulting Defendants, appeared at the conference.  (Minute Order dated Feb. 10, 2021.)  Plaintiffs were granted leave to serve Brown with the Amended Complaint, and Brown was informed that he would be required to file an answer to the Amended Complaint within 14 days of service.  (*Id.*)  Plaintiffs subsequently served an Amended Complaint on Brown.  (*See* Dkt. 48; Order dated April 20, 2021.)  After the time

to answer passed, Plaintiffs requested a certificate of default against Brown (Dkt. 49), but because Brown sought and received an extension of time to answer, Plaintiffs' request was denied.  (Dkt. 52; Order dated Apr. 27, 2021; Order dated Apr. 29, 2021.)

Plaintiffs filed a Motion for Default Judgment seeking a judgment against Horizons, Stark, and Tico Express on July 30, 2021.  (Dkt. 55.)  Brown did not file an answer and, on September 2, 2021, Plaintiffs again sought a certificate of default against Brown, which was entered.  (Dkt. 57; Dkt. 58.)  On September 22, 2021, Plaintiffs filed the Amended Motion for Default Judgment against all the Defaulting Defendants, including Brown.  (Motion, Dkt. 60.)

## DISCUSSION

### I.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a).  The plaintiff may then move the court for an entry of default judgment.  Fed. R. Civ. P. 55(b)(2).  "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  The plaintiff must demonstrate proper service of the summons and complaint.  *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013).  The plaintiff must also establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

The court must determine whether Plaintiffs' "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84.  "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577

F.3d at 84.  However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.  "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established…." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.    Jurisdiction

### A.    *Subject Matter Jurisdiction*

The Court has original jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 except, as discussed *infra*, as to Plaintiffs' claims for violations of NYLL §§ 195(1) and 195(3).

### B.    *Service on Defendants*

Plaintiffs served the Amended Complaint on Tico Express by delivering a copy of the Summons and Complaint to the New York Secretary of State.  (Dkt. 23.)  This constitutes proper service.  *See* Fed R. Civ. P. 4(h)(1)(B); N.Y. Bus. Corp. L. § 306(b)(1).

Plaintiffs properly served the Amended Complaint on Horizons and Stark by filing it with the court's electronic-filing system after counsel appeared on their behalf.  *See* Fed. R. Civ. P. 5(b)(2)(E). (Dkt. 18.)

Plaintiffs properly served the Complaint on Brown by leaving a copy of the Summons and Complaint with a person of suitable age and discretion at his home and then mailing a copy to his last known address.  (Dkt. 7.)  *See* Fed. R. Civ. P. 4(e); N.Y.C.P.L.R. § 308(2).  Plaintiffs properly served the Amended Complaint on Brown by mailing it to his last known address.  (Dkt. 48.)  Fed. R. Civ. P. 5(b)(2)(C).

### C.    *Personal Jurisdiction*

"[S]erving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).)

New York has general jurisdiction over corporations formed under its laws and operating within the state, *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018), and non-domiciliary corporations that transact business within the state.  N.Y.C.P.L.R. § 302(a)(1).

The Court has personal jurisdiction over Tico Express because Tico Express is a New York corporation and was properly served with the Summons and Amended Complaint.

Horizons is a foreign limited liability company with its principal place of business in Ohio. (Am. Compl. ¶ 8.)  Stark is a foreign corporation authorized to do business in New York.  (*Id.* ¶ 9.) Horizons and Stark "provide staffing, human resource, and other services to businesses around the country," including in New York.  (*Id.* ¶ 10.)  The Court has personal jurisdiction over Horizons and Stark because Horizons and Stark transact business within New York and were properly served with

the Summons and Amended Complaint.

New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016).  Brown's last known place of residence is in Brooklyn.  (*See* Dkt. 7; Dkt. 48.)  The Court therefore has personal jurisdiction over Brown.

### III.    Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiffs filed the following in support of the Motion: Notice of Motion (Dkt. 60); a memorandum of law in support of the Motion (Dkt. 60-1); copies of the certificates of default against the Defaulting Defendants (Dkts. 60-14, 60-15); a copy of the Amended Complaint (Dkt. 60-9); a proposed default judgment order (Dkt. 60-2); and proof of mailing the Motion papers to Defendants. (Dkt. 61.)  Plaintiffs have also affirmed that the Defaulting Defendants are not infants, in the military, or incompetent persons. (Dkts. 65, 65-1, 65-2, 65-3.)  Thus, compliance with the Local Civil Rules is satisfied.

### IV.    Liability under the FLSA and NYLL

#### A.    *Statute of Limitations*

A three-year statute of limitations applies under the FLSA for willful violations, including in actions where defendants have defaulted.  *See* 29 U.S.C. § 255(a); *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011).  A six-year statute of limitations applies under the NYLL.  *See* NYLL §§ 198(3), 663(3).

Plaintiffs commenced this action on January 8, 2019, alleging violations that occurred during their employment in 2018.  Plaintiffs may accordingly recover for all of their claims, as the entire time of their employment falls within the statute of limitations for both the FLSA and the NYLL.

#### B.    *Employment Relationship Under the FLSA*

The FLSA is to be "construed […] liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that

fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation and citations omitted).  To plead a cause of action under the FLSA, a plaintiff must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17-cv-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).  Courts in the Second Circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

### 1.    Whether Defendants are Employers

The FLSA broadly describes an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013). "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 104 (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).

A defendant is an employer under the FLSA if it meets the criteria for either enterprise or individual coverage.  *See Rowe*, 2019 WL 4395158, at *4.  The individual coverage test considers the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'"  *Id.*  Even if the plaintiffs are not themselves engaged in commerce, a defendant may meet the enterprise coverage test if the defendant has employees engaged in commerce or in the production of goods for commerce, "or … has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... whose annual gross volume of sales made or business done is not less than $500,000."  29 U.S.C. §

203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015).

"Commerce" is "trade, commerce, transportation, transmission, or communication among the several

States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities

may meet this test if "an enterprise employs workers who handle goods or materials that have moved

or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114,

121 (E.D.N.Y. 2011) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

Plaintiffs allege that Horizons, Stark, and Tico Express operated in interstate commerce and

had gross revenues in excess of $500,000 per year. (Gonzalez Decl. ¶ 8; Esaw Decl. ¶ 8; McCall Decl.

¶ 8; Ferguson Decl. ¶ 8.) Although these allegations merely repeat the statutory elements, they are

sufficient to establish that Defendants were required to comply with FLSA's minimum wage and

overtime requirements. While Tico Express operated as a local delivery company within New York

City, it is highly likely that the company transported goods that were involved in interstate commerce.

*See Cabrera v. Canela*, 412 F. Supp. 3d 167, 174 (E.D.N.Y. 2019) ("To decline to make reasonable

inferences of interstate commerce in cases like this would frustrate the FLSA's remedial purpose and

would give employers perverse incentives to default in FLSA actions"). While Plaintiffs have not

provided any additional evidence that Horizons, Stark, or Tico Express earn more than $500,000 in

gross revenue annually, Plaintiffs' conclusory allegations are sufficient in light of Defendants' default.

*See Castillo v. RV Transp., Inc.*, No. 15-CV-0527 (LGS)(JCF), 2015 WL 13746672, at *2 (S.D.N.Y. Dec.

21, 2015), *R&R adopted in part and rejected in part,* 2016 WL 1417848 (S.D.N.Y. Apr. 11, 2016) (accepting

bare allegation that enterprise took in $500,000 in gross revenue as sufficient in light of default).

Accordingly, Horizons, Stark, and Tico Express are employers under the FLSA.

With respect to whether an individual is an employer for FLSA purposes, "[t]he underlying

inquiry in determining 'employer' status is whether the individual possessed operational control over

employees …." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam). "[T]o be

an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The analysis of whether an individual is an "employer" is also guided by the "economic realities" test set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). The factors that the Court may consider include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). However, "[t]he 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

The FLSA "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do not diminish the significance of its existence.'" *Id.* (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982) (alteration omitted)).

Plaintiffs allege that Brown, as President and Chief Executive Officer of Tico Express, "controlled Tico Express' operations, and had the authority to hire, fire, and discipline employees; set work schedules, and determine the terms and conditions of employment"). (Gonzalez Decl. ¶ 9; Esaw Decl. ¶ 9; McCall Decl. ¶ 9; Ferguson Decl. ¶ 9.) Because these allegations closely track the *Carter* factors, they establish that Brown was Plaintiffs' employer for FLSA purposes.

2.    Whether Defendants are Joint Employers under the FLSA

Plaintiffs argue that Defendants were their joint employers.  (See Am. Compl. ¶¶ 6-24.)  "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations."  *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT)(RML), 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), *R&R adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

The joint employer test is "based on the circumstances of the whole [employment] activity viewed in light of the economic reality."  *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003).  Courts often rely on the four-factor "economic realities" analysis, which "ask[s] whether multiple employers together '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  *Galicia*, 2017 WL 6733985, at *2 (quoting *Mendez v. Pure Foods Mgm't Group, Inc.*, 14-CV-1515 (SRU), 2016 WL 183473, *3 (D. Conn. Jan. 14, 2016)).  Although the economic realities test "has been distilled into a nonexclusive and overlapping set of factors," courts must look "beyond a defendant's formal control over the physical performance of plaintiff's work" and consider the "broad … language in the statute."  *See Zheng*, 335 F.3d at 75.

Within the context of Plaintiffs' employment, the Defaulting Defendants acted as joint employers under the economic realities test.  Plaintiffs allege that the Defaulting Defendants jointly (1) had the power to "discipline and terminate Plaintiffs," (2) "set[] Plaintiff's schedules and day-to-day activities … supervis[ed] their performance," (3) "were responsible for compensating Plaintiffs throughout their employment," and, going to all three elements of the test, that the Defaulting Defendants "jointly managed, supervised, hired, fired, and controlled the manner of pay of Plaintiffs." (Am. Compl. ¶¶ 20-24.)  While there are no allegations that Defendants jointly maintained employment records concerning the Plaintiffs, no one factor is dispositive in the economic realities

14

test, and given the Defendants' Default, the allegations which are present are sufficient to conclude that there is a joint employer relationship under the economic realities test. *Fermin v. Las Delicias Peruanas Rest.*, Inc., 93 F. Supp. 3d 19, 36 (E.D.N.Y. 2015).

### 3.    Whether Plaintiffs were Employees

An "employee" under the FLSA is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute protects employees "who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). Each of the Plaintiffs allege that they were employees of the Defaulting Defendants. (Am. Compl. ¶¶ 25, 32, 39, 47; Gonzalez Decl. ¶ 10; Esaw Decl. ¶ 10; McCall Decl. ¶ 10; Ferguson Decl. ¶ 10.) Plaintiffs' allegations establish that they were employees under the FLSA.

### 4.    Whether any FLSA exemption applies

Finally, I examine whether Plaintiffs are exempt from FLSA's protections. *See* 29 U.S.C. § 213. Although "[s]ection 13 of the FLSA contains a litany of exemptions to the minimum wage requirement," *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014), FLSA exemptions are to be construed narrowly. *See id; Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2nd Cir. 2002).

As a threshold matter, FLSA exemptions are affirmative defenses which the defendant has the burden of invoking and proving. *Id.* In the event of a default, the Court may draw reasonable inferences and resolve factual shortcomings in favor of the Plaintiffs. *See Vicedomini v. A.A. Luxury Limo Inc.*, 18-CV-7467 (LDH), 2019 WL 12338298, at *6 n.8 (E.D.N.Y. Dec. 6, 2019), *R&R adopted,* 2020 WL 9814086 (E.D.N.Y. Mar. 13, 2020).

Gonzalez, Esaw, McCall, and Ferguson were employed respectively as a dispatch manager (Am. Compl. ¶ 25), delivery driver (*id.* ¶ 32), account manager (*id.* ¶ 39), and dispatch assistant (*id.* ¶

47).  They were compensated at an hourly rate and not on a salary or fee basis.  (*Id.*  ¶¶ 30, 37, 45, 52.) Therefore, the administrative exemption under the FLSA does not apply to Plaintiffs.  *See* 29 C.F.R. § 541.200.  The motor carrier exemption, which applies to any employee employed as a driver who is compensated for such employment on the basis of trip rates or another delivery plan, is also inapplicable to Esaw because he was compensated hourly.  *See* 29 U.S.C. § 213(b)(11); 29 U.S.C. § 213(b)(1).  Accordingly, the facts pleaded in Plaintiffs' Amended Complaint establish that Plaintiffs are non-exempt employees under the FLSA.

### C.    Employment Relationship under the NYLL

To prevail on a NYLL claim, Plaintiffs must establish that their employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment."  NYLL § 190.  "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors.  *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).

As the NYLL and FLSA definitions of "employer" are coextensive, *see Fermin*, 93 F. Supp. 3d at 37, Defendants are Plaintiffs' employers within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D.    Overtime Claims

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."

*Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* NYLL §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2). To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work. *Nakahata*, 723 F.3d at 201; *see also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

All Plaintiffs allege that they worked more than 40 hours per week and were never paid overtime. (Am. Compl. ¶¶ 27, 34, 41-42 49; Gonzalez Decl. ¶ 12; Esaw Decl. ¶ 12; McCall Decl. ¶ 12-13; Ferguson Decl. ¶ 12.)

These allegations establish the Defaulting Defendants' liability for failure to pay all Plaintiffs overtime pursuant to both the FLSA and the NYLL. *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established that he worked over 40 hours a week without time-and-a-half compensation, subjecting defendants to liability on default).

### E.    NYLL § 191(1)(a)(i) Claims

Plaintiffs also bring a cause of action for failure to timely pay wages under NYLL § 191(1)(a)(i). (Am. Compl. ¶¶ 75-82.) In the Amended Complaint, Plaintiffs allege that "[t]hroughout the relevant period, Defendants failed to pay Plaintiffs all overtime wages earned by Plaintiffs in violation of NYLL § 191(1)(a)(i)." (*Id.* ¶ 80.) In the Motion, Plaintiffs cite Section 191(1)(a)(i) to additionally recover unpaid wages for their final days of work for which they were not paid at all. (*See* Pl. Mem. at 9-10; Gonzalez Decl. ¶¶ 19-20; Esaw Decl. ¶¶ 20-21; McCall Decl. ¶¶ 20-21; Ferguson Decl. ¶¶ 19-20.)

NYLL § 191(1)(a)(i) requires employers to timely pay wages on a weekly basis to "manual workers" as classified under NYLL § 190.  New York Department of Labor guidance defines manual workers as individuals who spend more than 25% of their working time engaged in physical labor.  *See* N.Y. Dep't of Labor Op. Ltr. No. RO-09-0066 (May 21, 2009); *Krawitz v. Five Below, Inc.*, No. 22-CV-2253(LDH)(ARL), 2023 WL 6385711, at *3 n.4 (E.D.N.Y. Sept. 29, 2023) ("The duties an employee performs, not his title, determines whether he is a manual worker.").  Here, Plaintiffs fail to plead that they spent more than 25% of their working time performing physical labor, and so their status as manual workers cannot be established.  *Cf. id.* (concluding plaintiffs were manual workers where complaint pleaded "[a]t least 25%" of each Individual Plaintiff's tasks constituted manual labor, including cleaning, unpacking, stocking, processing transactions, and removing garbage"); *Levy v. Endeavor Air Inc.*, 638 F. Supp. 3d 324, 331 n. 5 (E.D.N.Y. 2022) (allegations sufficient where plaintiff pleaded "that more than 25% of her work involves physical labor, and lists specific tasks as examples").

Regarding Esaw, the Amended Complaint does allege that "[a]s a delivery driver, Esaw's primary job duties included driving the delivery truck, picking up packages to be delivered, and dropping off packages to the customers" without specifying the percentage of his working time that Esaw spent performing these tasks.  (Am. Compl. ¶ 33.)  Even if the Court were to find Esaw is a manual worker for purposes of NYLL § 191(1)(a)(i), however, the Amended Complaint does not plead any facts to support that Esaw was not paid for his final two days of work.  (*See* Am. Compl.; Esaw Decl. ¶¶ 20-21.)  Because an award granted pursuant to a default judgment may not "exceed in amount[] what is demanded in the pleadings," Fed. R. Civ. P. 54(c), Plaintiffs' recovery for unpaid wages is limited to overtime damages.[2]

Accordingly, I do not find Defendants liable for violations of NYLL § 191(1)(a)(i).

---

[2] The Amended Complaint also fails to allege that Gonzalez, McCall, and Ferguson failed to receive wages for their final days of work, thus establishing an additional basis for denial of their NYLL § 191(1)(a)(i) claims.

### F.    Wage Notice and Wage Statement Claims

Plaintiffs allege violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions.  (Am. Compl. ¶¶ 83-90.)  Section 195(1)(a) requires employers to provide employees at the time of hire with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule.  Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  None of the Plaintiffs received a wage notice at the time of hire, and none received proper wage statements with each payment of wages.  (Gonzalez Decl. ¶¶ 23-24; Esaw Decl. ¶¶ 24-25; McCall Decl. ¶¶ 24-25; Ferguson Decl. ¶¶ 23-24.)  NYLL §§ 198(1-b) and 198(1-d) impose statutory damages for violations of these provisions.

However, in order to pursue these claims in federal court, Plaintiffs must establish Article III standing by showing that they suffered a concrete injury in fact.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021).  A plaintiff does not automatically satisfy the injury-in-fact requirement "whenever a statute grants a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.*  To demonstrate standing for the purposes of bringing New York wage statement and notice claims in federal court, Plaintiffs must "link" the Defaulting Defendants' failure to provide them with wage information to the failure to lawfully compensate them.  *Gaskin v. Brooklyn Suya Corp.*, No. 22-CV-5648 (ENV)(LB), 2023 WL 9232962, at *8 (E.D.N.Y. Oct. 26, 2023) (collecting cases).  "Where the plaintiff does not establish a concrete injury fairly traceable to the statutory violation, the plaintiff lacks Article III standing and, in turn, the district court lacks subject matter jurisdiction to enter default judgment."  *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 373 (E.D.N.Y. 2022) (citing *Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022)).

Here, Plaintiffs merely allege that the Defaulting Defendants failed to provide the required wage notices and statements and, as a result, are liable to Plaintiffs for damages. (Am. Compl. ¶¶ 83-90.) These bare allegations do not establish a concrete injury traceable to the failure to provide wage notices and statements, and are therefore insufficient to establish Plaintiffs' standing to pursue these claims. *See Sanchez*, 643 F. Supp. 3d at 373. Accordingly, I respectfully recommend that Plaintiffs' request for damages on these claims be denied based on a lack of subject matter jurisdiction.

## V.    **Damages**

### A.    *Overtime Damages*

Each Plaintiff is entitled to an overtime premium for all hours worked over 40 per week at 1.5 times the greater of their regular rate of pay or minimum wage under both the NYLL and the FLSA. *See, e.g., Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303, 2018 WL 9945754, at *4, *8 (E.D.N.Y. Oct. 17, 2018).

Here, Plaintiffs allege that they were paid for 40 hours per week at their regular rate. (Am. Compl. ¶ 55.) Because Plaintiffs were never paid for their overtime hours, each Plaintiff is entitled to 1.5 times their regular rate for all hours over forty per week during their entire employment with Defendants, as set forth in the following table:

| Plaintiff | Regular Rate of Pay | Overtime Rate | Hours Worked Per Week | Weekly Overtime Hours | No. of Weeks | Total Overtime Payments Owed |
|---|---|---|---|---|---|---|
| Gonzalez | $20.00 | $30.00 | 112 | 72 | 19 | $41,040.00 |
| Esaw | $20.00 | $30.00 | 47.5 | 7.5 | 17 | $3,825.00 |
| McCall | $25.00 | $37.50 | 42.5 | 2.5 | 14 | $1,312.50 |
| Ferguson | $15.00 | $22.50 | 80 | 40 | 4 | $3,600.00 |

Accordingly, I respectfully recommend that Gonzalez be awarded **$41,040.00**, Esaw awarded **$3,825.00**, McCall be awarded **$1,312.50**, and Ferguson be awarded **$3,600.00** in unpaid overtime wages.

### B.    Liquidated Damages

An employee may recover liquidated damages under either the FLSA or NYLL equal to the amount owed for overtime compensation.  29 U.S.C. § 216(b); NYLL § 198(1-a).  If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages.  29 U.S.C. § 260; *see* NYLL § 198(1-a) (granting same good-faith exception to liquidated damages).  Because the Defaulting Defendants defaulted and did not respond to the Motion, there is no showing of good faith, and liquidated damages are appropriate.  *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

Accordingly, I respectfully recommend that Gonzalez be awarded **$41,040.00**, Esaw be awarded **$3,825.00**, McCall be awarded **$1,312.50**, and Ferguson be awarded **$3,600.00** in liquidated damages.

### C.    Prejudgment Interest

Plaintiffs also seek prejudgment interest under the NYLL.  Prejudgment interest is available for wage underpayments under the NYLL, which in this case is comprised of Plaintiffs' overtime claims.  *See* NYLL § 198(1-a); *Fermin*, 93 F. Supp. 3d at 30 (calculating prejudgment interest based on unpaid minimum wages, overtime pay, spread-of-hours pay, and misappropriated tips).  Prejudgment interest is not available for wage statement or notice violations, or for liquidated damages.  *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).

In New York, prejudgment interest accrues at the statutory rate of nine percent per year.  N.Y.C.P.L.R. § 5004.  "Where […] damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  *Id.* § 5001(b).  Courts have "wide discretion in determining a reasonable date from

which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F.Supp.3d at 49.) Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims. *See, e.g., Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

The daily rate of interest for each Plaintiff, from the midpoint date of their claims, is set forth in the following table:

| Plaintiff | Start Date | End Date | Midpoint Date | Total Damages Eligible for Prejudgment Interest (Unpaid Wages) | Daily Rate |
|---|---|---|---|---|---|
| Gonzalez | Mar. 1, 2018 | July 9, 2018 | May 5, 2018 | $41,040.00 | $10.12 |
| Esaw | Feb. 28, 2018 | June 27, 2018 | Apr. 28, 2018 | $3,825.00 | $0.94 |
| McCall | Apr. 1, 2018 | July 9, 2018 | May 20, 2018 | $1,312.50 | $0.32 |
| Ferguson | May 28, 2018 | June 24, 2018 | June 10, 2018 | $3,600.00 | $0.89 |

Accordingly, I respectfully recommend that Plaintiffs recover prejudgment interest at their respective daily rates from the midpoint date of their employment through the entry of the judgment.

### D.    Post-Judgment Interest

Plaintiffs also seek post-judgment interest, which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, e.g., Fermin*, 93 F. Supp. 3d at 53. Accordingly, I respectfully recommend that Plaintiffs be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### E.    Fifteen Percent Increase in Penalty if Damages not Paid within Ninety Days

Plaintiffs do not seek an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days, as provided for at NYLL § 198(4). However, that provision

mandates that "any judgment or court order awarding remedies under this section *shall provide* that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4) (emphasis added); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted,* 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). This award is therefore mandatory, regardless of whether Plaintiffs request it or not.

The increase applies only to damages awarded under state law. *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.,* No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted,* 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent enhancement to damages awarded under the NYLL). Accordingly, Plaintiffs' damages under the NYLL should be increased by fifteen percent if the Defaulting Defendants fail to timely satisfy the judgment.

F.    *Settlement Offset*

Plaintiffs have requested that the amounts received by Gonzalez, Esaw, and McCall as part of their settlement agreement with the Settling Defendants be deducted from their total damages owed as alleged in the Motion. Ferguson did not receive any award as part of the settlement agreement. (Cilliotta Decl. ¶¶ 112, 115, 118.)

Ordinarily, the Defaulting Defendants would not be entitled to an offset reducing their judgment liability based on Plaintiffs' settlement with the Settling Defendants. *See Kotuwage v. NSS Petroleum Inc.,* No. 15-CV-4374 (FB)(ST), 2018 WL 1189332, at *12 (E.D.N.Y. Feb. 8, 2018), *R&R adopted as modified sub nom. Mudun Kotuwage v. Bilt Petroleum, Inc.,* No. 15-CV-4374 (FB) (ST), 2018 WL

1187397 (E.D.N.Y. Mar. 7, 2018) ("most 'courts in the Second Circuit ... have held that a defendant in default may not invoke the benefits of the set-off rule'").

Plaintiffs, however, have incorporated the settlement amount paid by the Settling Defendants into the damages requested in the Motion for Default Judgment, thus according the Defaulting Defendants the benefit of an offset based on the settlement agreement between Plaintiffs and the Settling Defendants. *See Allstate Ins. Co. v. Yehudian*, No. CV144826JSAKT, 2018 WL 1767873, at *19 (E.D.N.Y. Feb. 15, 2018), *R&R adopted*, No. 14-CV-4826(JS)(AKT), 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018) ("A review of cases in which courts have applied the set-off rule reveals that in many of them, the plaintiff agreed to reduce its recovery").

Accordingly, I respectfully recommend that the total damages awarded to Gonzalez be reduced by **$13,226.65**, those awarded to Esaw be reduced by **$2,958.50**, those awarded to McCall be reduced by **$2,474.26**. Because Ferguson did not receive any payment from the settlement, her award should not be reduced.

## VI.    <u>Attorneys' Fees and Costs</u>

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL. *See* 29 U.S.C. § 216(b); NYLL § 663(1).

Plaintiffs request **$31,566.91** in attorneys' fees. (*See* Ciliotta Decl. ¶¶ 126-27; *see* Attorney Time Records, Ex. 10 to the Ciliotta Decl.) This amount reflects fees for the total time billed in this case by Plaintiffs' counsel—$44,657.50—offset by the amount already paid by the Settling Defendants pursuant to the settlement agreement, *i.e.*, $9,329.70 in fees and $3,760.89 in costs. (*See* Ciliotta Decl. ¶¶ 126-27; Joint Motion for Settlement Approval, Dkt. 31 at 4.)

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request. *Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *18 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*,

2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (quotation and citation omitted).

    1. <u>Hourly Rate</u>

Plaintiffs request attorneys' fees[3] for work done by Nicole Grunfeld, Esq. ("Grunfeld") and Nicola Ciliotta, Esq. ("Ciliotta") from October 17, 2018 to September 21, 2021. Grunfeld was admitted to the New York bar in 2005 and was a senior associate at the law firm Katz Melinger PLLC at this time of the Motion. (Ciliotta Decl. ¶ 124.) She has practiced in the field of employment law for more than 13 years. (*Id.*) Plaintiffs seek $375 per hour for Grunfeld.

 The Eastern District has recently awarded hourly rates in FLSA cases ranging from $300 to $450 for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates. *Martinez*

---

[3] Plaintiffs do not substantiate a request for costs related to the present Motion. (*See* Ciliotta Decl. ¶ 127.)

*v. New 168 Supermarket LLC*, 19-CV-4526 (CBA)(SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *report and recommendation adopted by* 2020 WL 5259056 (Sept. 3, 2020). I therefore find that $375 per hour for Grunfeld's work is within the range of rates found reasonable in other cases for an attorney with similar experience in a routine FLSA case.

Ciliotta was admitted to the New York bar in 2019 and is an associate at Katz Melinger PLLC. (Ciliotta Decl. ¶ 125.) Plaintiffs seek $275 per hour for Ciliotta. At the time he performed work on this case, Ciliotta was a junior associate with fewer than two years' experience. Therefore, the hourly rate for Ciliotta should be reduced to $200. *See, e.g., Li v. Leung*, No. 15CIV5262CBAVMS, 2016 WL 5369489, at *21 (E.D.N.Y. June 10, 2016), *R&R adopted as modified*, No. 15-CV-5262- (CBA), 2016 WL 5349770 (E.D.N.Y. Sept. 23, 2016) (reducing associate's award to $200 per hour for relatively uncomplicated default judgment).

Accordingly, I respectfully recommend that the reasonable rate for Grunfeld is $375 and the reasonable rate for Ciliotta is $200.

### 2. Reasonableness of Time Billed

Plaintiffs request attorneys' fees for 33.8 hours of work done by Grunfeld and 116.3 hours of work done by Ciliotta. (Dkt. 60-17.) Although Plaintiffs subtract the amount of fees already received from the Settling Defendants pursuant to the settlement agreement, Plaintiffs do not correlate those fees with the hours of work performed. I, therefore, examine whether the number of hours for which Plaintiffs are now requesting fees is reasonable.

A significant portion of the requested hours was for work done on the case prior to the settlement agreement with the Settling Defendants and for which the Plaintiffs already received fees. Specifically, all time billed from October 17, 2018 to April 21, 2020 was included in Plaintiffs' motion for settlement approval to support the reasonableness of the fees to be paid by the Settling Defendants. (*See* Exhibit 4 to Joint Motion for Settlement Approval, Dkt. 31-4.) These entries,

reflecting 25.1 hours for Grunfeld and 61 hours for Ciliotta, cannot, therefore, reasonably be billed as part of this motion for default judgment.

Additionally, I find that several billing entries, dated from April 24, 2020 until entry of the stipulation of dismissal as to the Settling Defendants on July 1, 2020, reflect work related to the settlement agreement and not the Defaulting Defendants. (*See, e.g.*, billing entries for April 24, 28, 30, May 4, 11, 14, 16, 19, 28, 29 and June 9, 10.) These entries, which are all billed by Ciliotta, total 6.6 hours.

Therefore, I reduce Plaintiffs' requested hours by the time for work done relating to the Settling Defendants. This results in presumptively reasonable hours of 8.7 for Grunfeld and 48.7 for Ciliotta.

   3. Calculating the Recommended Fee Award

Multiplying the reasonable hours by the reasonable rates set forth above, the presumptively reasonable fees are set forth in the following table:

| Biller | Requested Rate | Reasonable Rate | Requested Hours | Reasonable Hours | Total Fees (Reasonable Rate *x* Reasonable Hours) |
|---|---|---|---|---|---|
| Nicole Grunfeld | $375 | $375 | 33.8 | 8.7 | $3,262.50 |
| Nicola Ciliotta | $275 | $200 | 116.3 | 48.7 | $9,740.00 |
| | | | | Total | $13,002.50 |

Accordingly, I respectfully recommend that Plaintiffs be awarded **$13,002.50** in attorneys' fees.

## VII. Joint and Several Liability

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor." *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011) (holding the plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to …

impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).

I, therefore, respectfully recommend that Defendants be held jointly and severally liable for their violations of the FLSA and NYLL.

## CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion be granted, except as to recovery under NYLL §§ 191(1)(a)(i), 195(1), and 195(3), and that damages be awarded under the NYLL as follows:

| Plaintiff | Overtime Wages | Liquidated Damages | Settlement Offset | Total Damages |
|---|---|---|---|---|
| Gonzalez | $41,040 | $41,040 | ($13,226.65) | $68,853.35 |
| Esaw | $3,825 | $3,825 | ($2,958.50) | $4,691.50 |
| McCall | $1,312.50 | $1,312.50 | ($2,474.26) | $150.74 |
| Ferguson | $3,600 | $3,600 | $0 | $7,200.00 |

I further respectfully recommend that Plaintiffs be granted prejudgment interest at the following rates, from the following dates:

| Plaintiff | Calculation Start Date | Daily Rate |
|---|---|---|
| Gonzalez | May 5, 2018 | $10.12 |
| Esaw | Apr. 28, 2018 | $0.94 |
| McCall | May 20, 2018 | $0.32 |
| Ferguson | June 10, 2018 | $0.89 |

I further respectfully recommend that Plaintiffs be granted post-judgment interest and the fifteen-percent increase penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

I further respectfully recommend that Plaintiffs be awarded $13,002.50 in attorneys' fees.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:  Brooklyn, New York
March 11, 2024